PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALMEDO MÉNDEZ (*a*) COCUYO, Defendant and Appellant. SAME *v.* SAME.

Nos. 7117 and 7118. Argued November 8, 1938.—Decided December 22, 1938.

*Felipe Colón Díaz* for appellant. *R. A. Gómez, Prosecuting Attorney, and Luis Janer, Assistant Prosecuting Attorney* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

Almedo Méndez (*a*) Cocuyo was tried upon an information accusing him of the crime of assault with intent to commit murder. The jury found him guilty of aggravated assault and battery and from the judgment thereon this appeal was taken.

The charge was based upon the following facts, as alleged in the information:

". . . Because the said Almedo Méndez (*alias*) Cocuyo, defendant, on or about November 7, 1935, in the city of Yauco . . . wilfully and unlawfully, with malice aforethought, premeditation and deliberation and with the illegal intent to kill, attacked Angel Fraticelli, a human being, with a revolver, a deadly weapon, firing the same at him several times and wounding him in several places . . ."

Appellant assigns four errors. The first of these attacks the admission, by the trial judge, of two sworn declarations. From the transcript of the evidence, which is our authentic source of information, it appears that the first witness for the prosecution, Bautista Galarza, after testifying that he had seen the defendant shoot Fraticelli on the night in question, showed a marked tendency to contradict himself by making the following statements:

"District Attorney:
Did you or did you not see the weapon?
"A.—I did not see the revolver.
"Q.—Did something take place there at that moment between the defendant and Fraticelli, some argument, some quarrel, or was nothing the matter?
"A.—As to that I did not . . .; I did not see that, there were there a million drunkards.
"Q.—What I want to know, man, is what occurred between them when the shots . . .?
"A.—I do not know. I only heard those shots. Furthermore, we were taken to the court and the Chief of Police made us all, the witnesses, testify under threats."

24

The fiscal then laid the foundation for the impeachment of his own witness, by asking him if he had not testified differently before the investigating magistrate. With the witness' own identification of the sworn declaration shown to him, the fiscal introduced it to impeach his credibility.

More or less the same incident accompanied the examination of another witness for the prosecution by the name of José Arocho. In both instances the preliminary declaration was introduced and admitted solely for the purpose of impeaching the witness. Appellant maintains that the court admitted the documents as positive evidence for the People. This assertion is unsupported by the evidence. On the contrary, it appears from the record and the instructions that the judge expressly admitted them for the sole purpose of impeachment. We find no error.

In his instructions the judge summarized briefly what each of the witnesses had testified. In the second assignment appellant maintains that the court partly mistated the testimony of Bautista Galarza, the first witness for the prosecution, and in so doing prejudiced the defendant's case. In addition to the fact that this witness contradicted himself openly and that the court instructed the jury that such testimony should be doubted, the mistatement, in our opinion, was unimportant and purely technical. The judge failed to include in his summary the first part of the witness' testimony which had been as follows:

"District Attorney: answer the question. Who fired there the revolver shots?

"Witness: I heard two or three revolver shots.

"District Attorney: But who fired those shots? This is what I want to know.

"Witness: There the comments from the people were that. . .

"Judge: Not the comments, but what you saw. If you did not see, well you did not see.

"Witness: Almedo Méndez was standing there.

"District Attorney: Who fired the revolver shots? This is what I want to know.

". . . . .

"Do you not hear my question?

"Well, there we were . . .

"What I want to know is who fired revolver shots, who fired a weapon there, if anybody did.

"Well, Almedo Méndez.

"The defendant?

"Yes, sir."

It may be seen from the above that the witness had not answered the question of the fiscal. His first positive answer was the one to which the court referred in the instructions. We see no error.

By the next assignment it is urged that the defendant did not have a fair trial. The basis for this conclusion is that when Galarza's testimony was impeached by the fiscal, the court, on motion by the prosecution and after having the jury withdrawn, ordered the arrest of the witness on the charge of perjury in open court as authorized by the Act of March 9, 1911, p. 128. The court went on to say that it would punish any witness who committed perjury in its presence and generally condemned the practice of giving false testimony.

The precise objection is that the rest of the witnesses had been kept in an adjoining room, whose wall was but 8 or 10 feet high, when the court made the preceding statements, and that some of them ratified their original declarations for fear of being punished. The defendant attempted to establish the fact that the declarations before the municipal judge had been obtained under duress and had not been voluntary. The testimony of the witnesses used for this purpose is so weak that we cannot see how a jury could have given them credit. Galarza said that the chief of police threatened them all, and told them that "here you must tell the truth anyhow, if not we are going to lock you up as being scoundrels." Another one said that the chief was very angry

and held a whip in his hand, and that through fear he testified what he did. Still another said that the chief told them to tell the truth, and incidentally informed the court that the defendant and the chief were on bad terms. It was within the province of the jury to believe any set of witnesses. The court cannot be criticised for its remarks with regard to perjury, even assuming that the witness heard them. We fail to see the commission of any error.

The last assignment of error attacks the verdict as being against both the law and the evidence. We have read the transcript and find the error without merit. It is unnecessary to discuss the assignment in full.

The defendant was also accused and convicted of carrying a prohibited weapon. No separate brief has been filed on appeal, so we are bound to decide the case together with the more serious one already considered, especially as it was submitted on the same evidence.

Both judgments should be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.